UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANDY GAYOT,

                Plaintiff,

v.

BRYAN MALDONADO;
COUNTY OF SUFFOLK; and JOHN DOE,
*Corrections Officers*,

                Defendants.

**MEMORANDUM AND ORDER**
14-CV-4339 (RPK) (AYS)

-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

*Pro se* plaintiff Andy Gayot, formerly an inmate at Suffolk County Correctional Facility, filed this 42 U.S.C. § 1983 claim alleging excessive force and deprivation of medical care during his incarceration. Defendants moved for summary judgment, *see* Mot. Summ. J. (Dkt. #61), and the Court referred the motion to Magistrate Judge Shields for a Report and Recommendation ("R. & R."), *see* Mar. 28, 2024 Order Referring Mot. Magistrate Judge Shields recommended that the motion for summary judgment be granted based on failure to exhaust administrative remedies. *See* R. & R. (Dkt. #65). For the reasons that follow, the Court declines to adopt the R. & R. Instead, defendants' motion for summary judgment is granted as to the John Doe defendants, and otherwise denied.

## BACKGROUND

### 1. Plaintiff's Complaint

Plaintiff's complaint alleges several incidents of unwarranted use of physical force by corrections officers while he was incarcerated at Suffolk County Correctional Facility. *See* Am.

1

Compl. (Dkt. #28); Supp. Am. Compl. (Dkt. #29).  He alleges that on February 26, 2014, he was assaulted by Officer Bryan Maldonado, who "aggressively perform[ed] a body search," kicked plaintiff's shins, and knocked him to the ground, and that plaintiff was subsequently assaulted by numerous additional officers.  Am. Compl. 4.  As a result, plaintiff "suffered a dislocated thumb, right side pelvic and shoulder pain, chronic genital pain, bruising, depression, and social anxiety."  *Ibid.*  He alleges that his requests for medical treatment were ignored.  *Ibid.*

Plaintiff alleges that on May 8, 2014, an unidentified officer called him a rapist and assaulted him.  *Id.* at 5 (ECF pagination).  Plaintiff also alleges that his property was lost, including "exculpatory evidence in the form of letters . . . by the alleged victim."  *Ibid.*  Plaintiff further alleges that on October 6, 2014, he was assaulted by unidentified officers who held him down, punched him, twisted his wrist, and bent his knees and ankles.  Supp. Am. Compl. 4–5 (ECF pagination).  A nurse came to check on plaintiff but did not subsequently return.  *Id.* at 5 (ECF pagination).  Plaintiff alleges that he was served a tray "swimming in spoiled milk" and that an unidentified officer spit into plaintiff's lunch tray.  *Ibid.*

**2. Motion for Summary Judgment**

Defendants moved for summary judgment on all of plaintiff's claims, contending that (1) plaintiff failed to fully exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), (2) plaintiff failed to identify the corrections officers responsible, and (3) plaintiff failed to show proof of his alleged injuries.  *See* Mem. in Supp. of Mot. Summ. J. (Dkt. #61-2).

Defendants submitted a Rule 56.1 statement of undisputed facts with their motion, as well as accompanying exhibits.  *See* Rule 56.1 Statement (Dkt. #61-1).  Defendants assert that every inmate receives a handbook upon entering the Suffolk County Correctional Facility.  Bogert Aff.

2

¶ 4 (Dkt. #61-14).  The Rule 56.1 statement and accompanying materials note that plaintiff denied in his deposition having received such a handbook upon admission, but that plaintiff acknowledged in his deposition that he eventually obtained and "thoroughly" read the inmate handbook and is aware of the grievance procedure.  Dep. of Pl. 76:7–25 (Dkt. #61-7); Rule 56.1 Statement ¶ 19.

The handbook instructs inmates on a multistep grievance process.  First, an inmate may complain to the officer in his housing unit.  Mot. Summ. J., Ex. I 12 ("Inmate Handbook") (Dkt. #61-12).  If a resolution is not reached, the inmate may complete a grievance form, which "will be forwarded to the Sergeant assigned to [the inmate's] housing unit."  *Ibid.*  If the issue remains unresolved, the housing sergeant will forward the grievance to the grievance coordinator, who will investigate the completed grievance form.  *Ibid.*  Finally, if the inmate continues to disagree with the result, he can appeal the grievance coordinator's decision to the warden and ultimately appeal the warden's decision to the State Commission of Correction.  *Ibid.*

Defendants have no record of any grievance filed by plaintiff in connection with the February 2014, May 2014, and October 2014 incidents at issue in his lawsuit, although their records reflect that plaintiff previously filed grievances about other incidents, received responses to those grievances, and appealed those responses.  *See* Rule 56.1 Statement ¶ 42; *see also* Mem. in Supp. of Mot. Summ. J. 7–8; Mot. Summ. J., Ex. E (Dkt. #61-8); Mot. Summ. J., Ex. F (Dkt. #61-9); Mot. Summ. J., Ex. G (Dkt. #61-10).

Plaintiff, for his part, stated in his deposition that he either submitted or attempted to submit grievances regarding the incidents that form the basis of this lawsuit, but that he received no response.  Specifically, plaintiff stated that he reported the February incident to the housing officers and sergeant on duty "several times," Dep. of Pl. 50:24–51:14, and that he requested a grievance form but was not given one, *id.* at 52:20–25.  Plaintiff also stated that he submitted a

3

grievance to a housing officer and a sergeant about the May incident. *See id.* at 78:4–20, 114:5–17. Plaintiff further stated that he attempted to submit a grievance about the October incident to a housing officer and then a sergeant, who would not take it, and ultimately submitted the grievance through the library. *See id.* at 111:23–113:2. Plaintiff stated that he never heard back regarding any of these grievances. *Id.* at 113:6–16.

### 3. Judge Shields's Report and Recommendation and Plaintiff's Objection

Magistrate Judge Shields recommended granting the motion for summary judgment based on plaintiff's failure to exhaust available administrative remedies. *See* R. & R. 12–18. Judge Shields concluded that "[p]laintiff had the knowledge and means to report his alleged assaults and subsequent denial of medical care to the grievance committee, as evidenced by his three other grievances." R. & R. 16. She wrote that plaintiff "has not shown that [Suffolk County Correctional Facility]'s grievance procedure was not 'available' to him due to misrepresentations by prison officials," stating that there was "no evidence that Plaintiff was told that he could not file or appeal any grievance, or that his complaint involved non-grievable matters." *Id.* at 16–17. In addition, she concluded that plaintiff had not shown that "prison officials purposefully lost or refused to answer any grievance in order to prevent him from invoking his administrative remedies"; that plaintiff "was unaware of the appeals process"; or that "special circumstances warrant excusal from the exhaustion requirement." *Id.* at 17. As a result, Judge Shields concluded, plaintiff's suit should be dismissed for failure to exhaust administrative remedies. *See id.* at 18.

Plaintiff filed a letter objecting to Judge Shields's conclusions. *See* Pl.'s Obj. (Dkt. #67). With respect to exhaustion, plaintiff stated that "[i]t is a well-known tactic" of Suffolk County Correctional Facility "to answer some [grievances] and not others." *Id.* at 2. He added that while he is "familiar with the PLRA and its requirement to exhaust all remedies prior to filing a state

4

claim," the facility "apparently is well-versed in manipulating the process, according to several cases [plaintiff has] researched." *Ibid.*

The Court held oral argument concerning the summary judgment motion and plaintiff's objections to the R. & R. on December 19, 2024, specifically inviting the parties to address *Williams v. Correction Officer Priatno*, 829 F.3d 118 (2d Cir. 2016), in which the Second Circuit held that a correctional facility's grievance procedure qualified as unavailable when corrections officers failed to file a grievance that the plaintiff submitted for filing, and the facility's handbook did not outline how to appeal or otherwise pursue a grievance that officers did not file. 829 F.3d at 123–26. After the oral argument, defendants submitted a letter requesting a hearing at which a jail grievance officer could provide additional testimony regarding the Suffolk County Correctional Facility's grievance procedure, asserting for the first time that defendants were "not able to fully brief this issue in the motion papers" because plaintiff did not file his own brief in opposition to summary judgment. Defs.' Dec. 19, 2024 Letter (Dkt. #70).

## STANDARD OF REVIEW

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When timely objections have been made to the R. & R., "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

5

party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant. *Ibid.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In assessing the record, the Court considers cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). The Court views "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

## DISCUSSION

As explained below, when the summary judgment record is taken in the light most favorable to the plaintiff, defendants have not demonstrated that plaintiff failed to exhaust his administrative remedies. Accordingly, I overrule the R. & R.'s conclusion that defendants are entitled to summary judgment on that ground. Defendants are also not entitled to summary judgment on the alternative basis that plaintiff has failed to adequately plead injuries. But because

6

discovery is closed and plaintiff took no steps to ascertain the identities of the unnamed defendants, the unnamed defendants are dismissed from this lawsuit.

## I. Exhaustion of Administrative Remedies

Defendants are not entitled to summary judgment based on plaintiff's failure to exhaust administrative remedies because a reasonable jury could find, on the basis of plaintiff's testimony, that officers refused to accept plaintiff's grievances, and that prison policy did not provide guidance on how to further pursue a grievance under those circumstances.

The PLRA requires an inmate to fully exhaust administrative remedies before filing a federal civil rights action. 42 U.S.C. § 1997e(a); *see Williams*, 829 F.3d at 122. This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, the requirement applies to suits for money damages, even when such damages would not be available in prison administrative proceedings. *Booth v. Churner*, 532 U.S. 731, 734 (2001).

"Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (internal citations, quotation marks, and brackets omitted). Defendants must then show that plaintiff failed to "complete the administrative review process" through lack of "[c]ompliance with prison grievance procedures." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation and quotation marks omitted). In addition, the court must ask "whether an administrative remedy was in fact 'available' to the inmate." *Williams*, 829

7

F.3d at 123. The Second Circuit has highlighted three circumstances in which an administrative remedy may qualify as unavailable:

> First, an administrative remedy may be unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Second, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . . Third, an administrative remedy may be unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id.* at 123–24 (internal citations and quotation marks omitted).

When a plaintiff alleges that officers refused to file his grievance, a court must ask whether the prison regulations "adequately outline the process to appeal or otherwise exhaust administrative remedies" in such a scenario. *Id.* at 124. In *Williams*, the plaintiff alleged that he handed his grievance to a correction officer to file in accordance with facility procedures, but that the correction officer never filed the grievance. *Ibid.* The court observed that although "an administrative remedy was 'officially on the books,'" the regulations "g[a]ve no guidance whatsoever to an inmate whose grievance was never filed." *Ibid.* (internal citation omitted). Instead, "[o]n their face, the regulations only contemplate[d] appeals of grievances that were actually filed." *Ibid.* Thus, "the process to appeal an unfiled and unanswered grievance [wa]s prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. Because "the grievance procedures that were technically available to [the plaintiff] [we]re so opaque and confusing that they were, 'practically speaking, incapable of use,'" the court held that the plaintiff had exhausted all administrative remedies actually available to him. *Ibid.* (quoting *Ross v. Blake*, 578 U.S. 632, 643 (2016)).

Following *Williams*, multiple courts in the Second Circuit have "denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance" by an

8

inmate, in the absence of grievance procedures making clear to the inmate how to proceed under those circumstances. *Johnson v. Mason*, No. 22-CV-590 (MAD) (CFH), 2023 WL 10365204, at *8 (N.D.N.Y. Dec. 27, 2023) (quoting *Stephanski v. Allen*, No. 18-CV-76 (BKS) (CFH), 2020 WL 806331, at *8 (N.D.N.Y. Jan. 22, 2020)), *report and recommendation adopted*, 2024 WL 396679 (N.D.N.Y. Feb. 2, 2024); *see Hudson v. Kirkey*, No. 20-CV-581 (LEK) (DJS), 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) ("[Defendant] has failed to demonstrate the absence of a material factual dispute as to whether the grievance process was 'unavailable' due to the machinations or misrepresentations of prison officials who inhibited the filing of Plaintiff's submissions."); *McLean v. LaClair*, No. 19-CV-1227 (LEK) (ATB), 2021 WL 671650, at *9 (N.D.N.Y. Feb. 22, 2021) (similar); *Carter v. Revine*, No. 14-CV-1553 (VLB), 2017 WL 2111594, at *12 (D. Conn. May 15, 2017) (finding no available administrative remedy when there was "no procedure for grievances that are not filed as a result of a correctional officer failing to assist the inmate in the grievance process despite being so required"); *Juarbe v. Carnegie*, No. 15-CV-1485 (MAD) (DEP), 2016 WL 6901277, at *4 (N.D.N.Y. Nov. 23, 2016) (denying summary judgment because, "when drawing all inferences in the non-moving party's favor, Plaintiff's grievances were both unfiled and unanswered"); *see also Thaxton v. Simmons*, No. 10-CV-1318 (MAD) (RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether Plaintiff never filed his initial grievance . . . as Defendants claim, or that, as Plaintiff claims, he filed a timely grievance that was lost or tampered with by Defendants.").

*Williams* controls this case. As in *Williams*, plaintiff asserts that he submitted grievances to officers in accordance with prison procedures—which simply direct an inmate to request and fill out a grievance form that "will be forwarded to the Sergeant assigned to your housing unit," who may attempt to resolve the grievance and will forward any unresolved grievance to the

9

"Grievance Coordinator" for decision. *See* Inmate Handbook 12. Plaintiff contends, though, that in two cases officers would not allow him to file a grievance and in all three cases the facility rendered no response. *See* Dep. of Pl. 50:24–51:8, 52:20–25 (stating that plaintiff reported the February incident to the housing officers and sergeants but received no response, and that he requested a grievance form but was not given one); *id.* at 78:4-20, 114:5–17 (stating that plaintiff submitted a grievance about the May incident to a housing officer and sergeant but received no response); *id.* at 111:23–113:2 (stating that plaintiff attempted to submit a grievance about the October incident to a housing officer and then a sergeant, who would not accept it, and that he then submitted the grievance through the library but received no response). Further, as in *Williams*, the inmate handbook "give[s] no guidance whatsoever to an inmate" about what to do when a grievance goes unfiled or unanswered. *Williams*, 829 F.3d at 124; *see* Inmate Handbook 12 (describing how to appeal an unfavorable grievance decision but not what action to take if no decision is rendered). Accordingly, this case falls within the same exception to exhaustion rules discussed in *Williams*: to the extent that a procedure for appealing an unanswered grievance existed at all, plaintiff was not required to follow it because that procedure was "prohibitively opaque, such that no inmate could actually make use of it." *Williams*, 829 F.3d at 126; *cf. Ballard v. Dutton*, No. 21-CV-1248 (LEK) (CFH), 2024 WL 4624606, at *10 (N.D.N.Y. Feb. 2, 2024) (report and recommendation) (finding that plaintiff needed to appeal an unanswered grievance when the grievance procedures instructed him on how to appeal the "absence of a response").

Because the parties did not discuss *Williams* in their filings, I invited them to address its application at oral argument, but defendants' efforts to avoid application of that case did not persuade. Defendants contended that the Court should not engage with *Williams* because plaintiff failed to raise a sufficiently specific objection to Judge Shields's R. & R. But the thrust of

10

plaintiff's objection to Judge Shields's exhaustion holding was that the facility had not answered his grievance. Pl.'s Obj. 2 (describing it as a "well-known tactic" of Suffolk County Correctional Facility "to answer some [grievances] and not others" and stating that the facility "manipulat[es]" the grievance process). Liberally construed, that *pro se* submission encompasses an objection that the plaintiff's purported failure to exhaust should not be held against him because he attempted to file a grievance but received no response—the situation that *Williams* addresses.

Nor can defendants avoid the application of *Williams* by attacking the credibility of plaintiff's account. At oral argument, defendants emphasized that plaintiff has not supported his account of his attempts to file grievances with evidence beyond his own testimony, and they suggest that plaintiffs' successful use of the grievance process to press other complaints makes his account of unanswered grievances far-fetched. But while defendants may well persuade a trier of fact that plaintiff's version of events should be disbelieved, a party's testimony generates a material dispute of fact that precludes summary judgment unless the testimony is "so utterly discredited by the record that no reasonable jury" could believe it. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *see also Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (holding that a plaintiff's testimony, if not "wholly improbable," can be "independently sufficient to raise a genuine issue of material fact"). And plaintiff's account is not "wholly improbable," *ibid.*, merely because he has successfully filed grievances on other occasions. A trier of fact could reasonably believe that corrections officers declined to accept grievances from plaintiff on several occasions even if officers had accepted grievances from plaintiff at other times.

Equally unpersuasive is defendants' suggestion, raised for the first time at oral argument, that plaintiff's self-described attempts to file grievances did not comply with the facility's grievance policy because plaintiff should have placed his grievance in a "box" on his unit. *See* Tr.

11

of Dec. 19, 2024 Oral Arg. 9–10 (Dkt. #71). When asked for a record citation to support that requirement, defendants identified none. *See ibid.*; Defs.' Dec. 19, 2024 Letter. Instead, after oral argument, defendants asked that the record be reopened to substantiate this requirement because they were previously "not able to fully brief" the nature of the jail's grievance procedures. *Ibid.* But to the contrary, defendants moved for summary judgment based on failure to exhaust, after hearing plaintiff's deposition testimony about the steps that he took to exhaust his grievance. At that point, defendants had an opportunity—indeed, an obligation—to put forward evidence of the grievance procedures that they assert plaintiff failed to comply with. *See Williams*, 829 F.3d at 126 n.6 ("[D]efendants bear the initial burden of establishing the affirmative defense of non-exhaustion by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures which demonstrate that a grievance process exists and applies to the underlying dispute") (internal quotation marks and citations omitted). And defendants attempted to do so, by submitting an inmate handbook that nowhere mentions use of a grievance "box." Defendants' motion for summary judgment is properly decided based on the record evidence that defendants themselves submitted in support of that motion.

In sum, defendants are not entitled to summary judgment based on failure to exhaust. Taking the record in the light most favorable to plaintiff, plaintiff attempted to file grievances regarding the February, May, and October 2014 incidents through the procedures outlined in the inmate handbook but received no response. Plaintiff cannot be faulted for failing to press his grievance further—viewing the record in the light most favorable to plaintiff—because the facility provided inmates with no guidance on how to appeal an "unfiled and unanswered grievance." *Williams*, 829 F.3d at 126. Defendants' motion for summary judgment on this basis is accordingly denied.

## II.  Failure to Provide Evidence of Injuries

Because defendants are not entitled to summary judgment on the failure-to-exhaust ground set forth in the R. & R., I turn to defendants' alternative argument—not addressed in the R. & R.—that they are entitled to summary judgment on plaintiff's excessive force claims because "there is no evidence in the record that Plaintiff actually suffered any injuries."  Mem. in Supp. of Mot. Summ. J. 11.  When the record demonstrates "no injury," a plaintiff's "excessive force claim . . . fails as a matter of law." *Yusuf v. City of New York*, No. 15-CV-5545 (EK) (ST), 2022 WL 393882, at *11 (E.D.N.Y. Feb. 9, 2022).  But a plaintiff's "deposition testimony" can be "sufficient evidence to defeat . . . summary judgment dismissal." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 554 (2d Cir. 2010).  As a general matter, as discussed above, "a district court may not discredit a witness's deposition testimony on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010).  Here, plaintiff's deposition testimony that he suffered multiple injuries, including swollen genitals and a dislocated thumb, from the incidents he complains of, *see* Dep. of Pl. 80:19–81:10, constitutes evidence of injury sufficient to withstand summary judgment.  Summary judgment based on absence of injury is therefore denied.

## III.  Failure to Identify the John Doe Defendants

Summary judgment is granted as to the John Doe defendants because plaintiff has made no effort to identify those defendants.  "Using 'John Doe' in lieu of an individual defendant's name does not adequately identify that person." *Neira v. County of Nassau*, No. 13-CV-7271 (JMA) (AYS), 2022 WL 4586045, at *7 (E.D.N.Y. Sept. 29, 2022).  Courts "typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." *Id.* at *8 (citation omitted); *see also, e.g.*, *Warren v.*

*Goord*, 476 F. Supp. 2d 407, 413–14 (S.D.N.Y. 2007).  But "[w]here a plaintiff 'has had ample time to identify' a John Doe defendant but gives 'no indication that he has made any effort to discover the defendant's name,' . . . the plaintiff 'simply cannot continue to maintain a suit against' the John Doe defendant."  *Coward v. Town & Village of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (quoting *Kearse v. Lincoln Hosp.*, No. 07-CV-4730 (PAC) (JCF), 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009)) (brackets omitted); *see also Keesh v. Artuz*, No. 97-CV-8417 (AKH), 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008) ("Even after discovery, plaintiff has failed to identify the 'John Doe' and 'Jane Doe' defendants.  Accordingly, the complaint against them must be dismissed.")

Here, summary judgment is appropriate on the John Doe claims because discovery has concluded without identification of the John Does.  Plaintiff first brought claims against the John Doe officers on July 14, 2014.  *See* Compl. (Dkt. #1).  As of August 23, 2016, discovery had been "progressing," and both parties indicated that they would have discovery completed by January 13, 2017.  Aug. 23, 2016 Min. Order (Dkt. #43).  The case was then closed on May 15, 2017, with leave for plaintiff to move to reopen the case pending his release from incarceration.  May 15, 2017 Min. Entry (Dkt. #44).  On November 30, 2022, following a five-year pause in litigation, plaintiff asked to reopen the case and indicated that he wished to move for summary judgment.  Nov. 30, 2022 Letter (Dkt. #48).  Judge Shields granted plaintiff's request to commence dispositive motion practice, noting that "discovery in this case has concluded."  Sept. 8, 2023 Order.  Plaintiff did not object or request an opportunity for further discovery.  Because discovery has concluded without any identification of the John Doe defendants, those defendants are appropriately dismissed.  *See*, *e.g.*, *Coward*, 665 F. Supp. 2d at 301–02 (dismissing John Doe claims when the

14

magistrate judge had "declared all discovery complete in March 2008 []without apparent objection from Plaintiff").

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment as to the John Doe defendants and otherwise denies the motion for summary judgment. The Clerk of Court is respectfully directed to dismiss all claims against the John Doe defendants and to mail a copy of this order to plaintiff.

SO ORDERED.

                                             /s/ Rachel Kovner
                                            RACHEL P. KOVNER
                                            United States District Judge

Dated: December 28, 2024
       Brooklyn, New York